**KALIELGOLD PLLC**

Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
Amanda J. Rosenberg (SBN 278507)
*arosenberg@kalielgold.com*
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Class*

(additional counsel on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA MAYBERRY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WEX, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1. This is a proposed class action seeking damages, injunctive and declaratory relief from Defendant WEX, which includes a division called WEX Health (also referred to herein as "WEX" or "Defendant"). WEX is a third-party administrator that allows companies to outsource their benefits administration for Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage and payment processing.

2. COBRA is a federal law that allows workers and their family members to temporarily continue their group health coverage for a limited period of time after losing their health coverage due to certain qualifying and often challenging life events, such as job termination, reduced hours, death of the covered employee, divorce or legal separation.[1]

3. This action concerns the unlawful, unfair and deceptive assessment of a uniform $20.00 "Online Payment Processing Fee" ("OPP Fee"), which is nothing more than a junk fee WEX charges to individuals who qualify for COBRA and are desperate to keep their healthcare coverage.

4. Plaintiff, Christina Mayberry, on behalf of herself and the class, seeks damages, among other remedies, and injunctive and declaratory relief, as described in more detail below.

## PARTIES

5. Plaintiff Christina Mayberry is a resident and citizen of San Diego, California.

6. Defendant WEX is a Delaware corporation that operates as a COBRA administrator and offers an online platform for consumers to manage their COBRA healthcare benefits. WEX is headquartered in Portland, Maine.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

a. the proposed Class is comprised of at least 100 members, § 1332(d)(5)(B);

---

[1] References herein to COBRA health coverage/insurance is inclusive of medical, health and vision insurance, including adjacent benefits like health saving accounts and flexible saving accounts.

b. at least one member of the proposed class is a citizen of a State other than California, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. §§ 1332(d)(2), (6).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

### I. Consolidated Omnibus Budget Reconciliation Act - COBRA

9. COBRA applies when a person experiences a qualifying event that results in the loss of employer-sponsored health coverage, such as job termination, reduced hours, death of the covered employee, divorce or legal separation. COBRA allows people to keep their existing group health plan and apply any deductibles they paid while at their job, which prevents the need to start over with a new deductible, find a new plan or change doctors—which is especially important when a person is receiving medical treatment and is faced with losing medical coverage due to a job loss or another qualifying event.

10. COBRA continuation coverage allows workers who separated from their jobs to continue their employer-sponsored health insurance for up to 18 or 36 months, depending on the reason for the separation.

11. In typical circumstances, the cost of health insurance premiums under COBRA is paid entirely by the worker. Given the costs of insurance coverage, this is a significant financial burden.

12. By way of example, the average monthly cost of COBRA insurance premiums can be more than $700.00 per month for individual coverage, or more than $2,000.00 per month for family coverage.[2]

[2] *See* https://www.fidelity.com/learning-center/smart-money/cobra-insurance.

13. Given the high cost of COBRA coverage— and that circumstances for people paying for COBRA are subject to change— COBRA plans must allow qualified beneficiaries to pay the required premiums on a monthly basis and may allow payments at other intervals (for example, weekly or quarterly).

14. During this stressful time for individuals concerned about losing health coverage, the maximum amount that can be charged to COBRA participants cannot exceed the cost of coverage for the individual or their family through the group health plan, plus a 2% administrative charge, or 102% of the cost of coverage.

**II. COBRA Administration is Big Business for WEX**

15. WEX describes itself as “a global commerce platform that helps businesses solve for operational complexities like employee benefits, managing and mobilizing fleets, and streamlining business payments”, further stating: “[i]f you need an employee benefits and COBRA administrator that will act as an extension of your HR staff, WEX has just the solution for you. We can help your team save time and money and eliminate stress.”

16. When an employer uses WEX’s services and subsequently has an employee that is terminated or otherwise eligible for benefits under COBRA, the employer informs WEX of a qualifying event, and WEX purports to administer the notice and other requirements of COBRA. This includes communicating to eligible employees or former employees their option to continue group health coverage and the cost to the individual of such coverage and collecting COBRA monthly insurance premiums.

17. COBRA administration is big business for WEX. COBRA payment processing falls under WEX’s Benefits segment. WEX’s benefits segment generates hundreds of millions of dollars each year through its software-as-a-service (SaaS). Within this segment is WEX’s payment processing subsegment, which WEX represents as providing substantial revenues, including the $20.00 junk fee that is the subject of this action.

18. When consumers make their monthly COBRA premium payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly premium payments, regardless of the form of

payment (ACH, debit or credit card), and regardless of the amount. Whether a consumer is paying $10 or $1,000 they are forced to pay the OPP Fee when making online payments to maintain their COBRA coverage.

19. Consumers making one-time monthly premium payments online are unable to avoid this OPP Fee, regardless of payment method.

20. Further, at no time does WEX inform consumers of the nature or purpose of the OPP Fee, including why it was being charged.

21. Worse yet, reasonable consumers like Plaintiff go through the sign-up process and proceed to checkout without becoming aware of Defendant's OPP Fee until the final payment screens.

22. Adding to the confusion, when consumers look up their payment history on the Payment Information Screen, the "Amount Received" column does not include the OPP Fee, only the amount of the premium payment.

23. In addition, as detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

24. In other words, federal law allows employers and their contractors to assess a maximum 2% fee as compensation for all administrative tasks associated with COBRA continuing health coverage.

25. For example, if the total cost of the health plan is $700.00, then the COBRA participant cannot be charged more than a $14.00 fee ($700.00 x .02) in addition to the $700.00 for coverage, for a total cost of $714.00 to access that coverage.

26. However, as described herein, not only does WEX fail to timely and adequately notify reasonable consumers of the $20.00 OPP Fee or to adequately disclose reasonable alternatives to paying the $20.00 OPP Fee, WEX charges administrative fees in excess of the 2% cap to consumers paying for continuing health coverage under COBRA.

27. Specifically, the $20.00 OPP Fee that WEX charges to consumers making monthly

COBRA premium payments is in addition to—and in excess of the federally allowed— 2% administrative fee already being paid by consumers.

28. The $20.00 OPP Fee is a great financial benefit to WEX at the expense of consumers making an already large insurance premium payment during a stressful time in their lives.

29. WEX openly boasted about the financial benefits of its OPP Fee in a recent Q1 2025 earnings transcript, when Melissa Smith, Chairman of the Board, President and CEO of WEX, stated that the Benefit segment of its business, which includes its COBRA administration services, is "less sensitive to macroeconomic trends than the rest of the company and provides stability to WEX during economic downturns. For example, during the COVID-19 pandemic, we saw the increase in unemployment had a modest impact to account growth, but this was partially offset by the increase in usage of our COBRA product. As a result, account growth remained fairly consistent despite the disruption."

30. Similarly, in Defendant's Q1 2025 earnings transcript, Jagtar Narula, Chief Financial Officer for WEX, reiterated, "As Melissa discussed earlier, our Benefits segment is more resilient in the near term to economic cycles as changes in employees on benefit programs is typically at least partially replaced by COBRA-related revenue."

31. Even more, in a Q2 2025 Earnings Report, when referring to its Benefits segment, which includes COBRA, WEX stated that "[w]hile our interchange revenues in this segment are a relatively small piece of the total, they generate a steady revenue stream and a strong-flow through to operating income." What WEX considers a "small piece" is relative, as its Benefits revenue in Q2 2025, alone, was $195.1 million. The interchange revenues that WEX references likely include the OPP Fee that WEX charges to consumers.

**III. WEX's OPP Fee Scheme**

32. Consumers who wish to continue their health coverage pursuant to their rights under COBRA must make monthly premium payments. Failure to do so has dire consequences, including termination of healthcare coverage.

33. When an employer's COBRA benefits are administered through WEX, consumers

make their monthly payments directly to WEX, through the WEX online portal. Consumers often chose to make their COBRA premium payments online to avoid missing the COBRA election deadline, or to avoid the risk of a check getting lost in the mail, or upon reaching its destination, which could result in lost coverage if it is not timely received.

34. As detailed above, when consumers make their monthly premium payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly premium payments, regardless of the form of payment (ACH, debit or credit card) and regardless of the payment amount, confirming it is untethered to any actual cost incurred by WEX for the particular consumer.

35. As occurred with Plaintiff, this add-on fee significantly increases health care costs for people who are already struggling to survive a difficult period of unemployment.

36. The OPP Fee is purportedly for a "service"—the administration of COBRA continuing health benefits—that the employer and WEX are already compensated for in the form of the 2% administrative fee authorized by COBRA.

37. However, the processing of online payments, which is what the OPP Fee purports to cover, is an administrative function already encompassed in the 2% administrative fee authorized by COBRA.

38. The OPP Fee is simply the exploitation of an opportunity to gouge already-struggling consumers who are desperate to keep their health care coverage for themselves and their families.

39. The fee is presented to consumers as mandatory. If there are alternative means to avoid the OPP Fee, WEX fails to reasonably inform consumers of alternative forms of payment to avoid the OPP Fee.

40. To make matters worse, consumers looking to pay multiple months' premiums online are unable to do so in a single payment and must pay each month's premium in multiple payments. Therefore, even if a consumer desires to pay six months of premium payments on the same day, they must make six separate online payments, resulting in $120.00 in unavoidable OPP Fees.

41. As a result of Defendant's unfair and deceptive conduct, Plaintiff and the Class suffered damages.

**IV. The OPP Fee is a Junk Fee That Violates Federal Guidance**

42. WEX's OPP Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[3]

43. As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[4]

44. California recently expanded its Consumers Legal Remedies Act ("CLRA") via amendment to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the amended California law, it is illegal to advertise a low price for a product or service, only for that product or service to be subject to additional or mandatory fees later.

45. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the Federal Trade Commission ("FTC") makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example,

---

[3] The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

[4] Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

before the consumer "add[s] to shopping cart."[5]

46. Defendant violates California law and federal guidance by adding the OPP Fee as a line item well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of the OPP Fee and whether consumers are getting any benefit at all from the fee charged.

47. In addition, there is no actual "processing" performed where the employer already pays for WEX's service.

48. The OPP Fee thus provides no additional value to consumers, and is instead, a classic "junk fee."

49. WEX imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, WEX engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must pay the OPP Fee unilaterally set by Defendant.

## V. Plaintiff Mayberry's Experience

50. Plaintiff Mayberry's former employer used WEX to offer her federally mandated COBRA benefits. Plaintiff Mayberry was thus forced to use WEX to receive her COBRA benefits and was unable to choose a different administrator.

51. As an example, on October 8, 2025, November 3, 2025, and December 2, 2025, Plaintiff Mayberry's monthly premium for continuing health coverage was $483.83. To allow her to pay for her health coverage, WEX assessed Ms. Mayberry an additional and mandatory $20.00 OPP Fee—a surcharge of about 4.13% over and above 102% of her monthly health care coverage premium during each of these months.

52. After an increase in her premium payment from $483.83 to $1,159.88 in or around January 2026, Plaintiff has continued to pay monthly COBRA premiums and to pay the $20.00 Opp Fee each month.

---

[5] *See* Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures in Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

53. During the COBRA sign up process, Plaintiff Mayberry was unaware of the OPP Fee, which Defendant did not adequately disclose.

54. Plaintiff Mayberry first learned of the OPP Fee after the sign-up process, at which time she was not adequately informed of the purpose of the OPP Fee or why it was being charged.

55. When Plaintiff Mayberry first learned of the OPP Fee, she was not reasonably informed of alternative means of payment to avoid the OPP Fee. The payment screen was confusing and did not include any language that would reasonably or adequately inform Plaintiff Mayberry that the OPP Fee could be avoided by alternative forms of payment, such as a check.

56. Regardless, Plaintiff Mayberry does not consider payment by check a reasonable alternative given concerns about missing the COBRA election or payment deadline, including the risk of a check getting lost or stolen in the mail, which could result in lost coverage if it is not timely received.

57. Plaintiff Mayberry was deceived into paying an unexpected, misleading and unlawful fee without adequate explanation or disclosure, and she could not—and did not—reasonably foresee the OPP Fee.

58. As a result, Plaintiff Mayberry sustained economic injury by paying the unreasonable and unlawful OPP Fee.

## FED. R. CIV. P. 9(b) ALLEGATIONS

59. Defendant is in the best position to know what content it placed on its website(s) during the relevant timeframe, and the knowledge it had regarding the OPP Fee and related disclosures, to the extent necessary, Plaintiff satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

60. **WHO**: Defendant unfairly, deceptively and/or misleadingly imposed the OPP Fee on consumers paying for continued health coverage under COBRA.

61. **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying for continued health coverage under COBRA. Defendant's conduct deceived Plaintiff and Class Members into

believing that the OPP Fee is mandatory when paying for continued health coverage under COBRA, when in reality the OPP Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Defendant required Plaintiff and Class Members to make COBRA payments through its online payment platform where it then imposed the OPP Fee. Defendant charged the OPP Fee to all consumers paying for continued health coverage under COBRA using an electronic payment method, regardless of the payment method and regardless of the amount of the payment. Defendant failed to post, display or otherwise timely and adequately disclose the OPP Fees to COBRA recipients during the COBRA sign up process or during the payment process. Defendant knew, or should have known, that it failed to adequately disclose the OPP Fee and that this fee—including the excessive amount of the OPP Fee—is material to reasonable consumers, including Plaintiff and Class Members. The OPP Fee is a sham, a classic "junk fee." The "processing" purportedly provided by WEX, which is allowing consumers to pay for the health coverage they are entitled to by COBRA, is a core part of the aspect of the service WEX (and the employers that use Wex) is federally required to provide. The OPP Fee is merely a second payment—in the form of a junk fee—for the service that consumers are already paying for.

62. **WHEN**: Defendant engaged in these unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiff and Class Members signed up for COBRA benefits and made COBRA payments through Defendant's online platform, prior to and at the time Plaintiff and Class Members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

63. **WHERE**: Defendant's unfair and deceptive junk fee was uniformly applied to consumers who signed up for COBRA benefits and made COBRA payments through Defendant's online platform. Defendant's website, advertising and other marketing materials similarly failed to explain or otherwise timely or adequately disclose the OPP Fee being charged or reasonably alternatives to avoid the OPP Fee.

64. **HOW**: Defendant hid, obfuscated or otherwise concealed from consumers its imposition of the OPP Fee by describing the junk fee as an "Online Payment Processing Fee" in

order to prevent consumers from discovering the additional charges. Even if consumers were to discover the OPP Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the OPP Fee or reasonable alternatives to paying this fee, or why it was imposed.

65. **WHY**: Defendant engages in its unfair and deceptive junk fee scheme in order to induce Plaintiff, Class Members and all reasonable consumers to pay the undisclosed and unlawful OPP Fee, resulting in profits in the millions of dollars.

66. **INJURY**: Plaintiff and Class Members paid a premium or otherwise paid more for COBRA benefits when they otherwise would not have absent Defendant's misrepresentations.

## CLASS ALLEGATIONS

67. Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the members of the following class ("California Class"):

> During the fullest period allowed by law, all persons who were charged the OPP Fee by WEX in relation to COBRA benefits in the state of California.

68. The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors and any entity in which Defendant or its parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors and assigns of any such excluded persons.

69. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

70. **Numerosity:** While Plaintiff does not know the exact size of the Class but estimates

that it is composed of thousands of persons as WEX represents that it administers COBRA benefits for more than 350 payroll/benefits administration partners and more than 225 insurance carriers.[6] The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of its claims in a class action rather than in individual actions will benefit the parties and the courts.

71. **Common Questions Predominate:** This action involves common questions of law and fact to the potential Class because each Class Member's claim derives from the deceptive, unlawful and/or unfair junk fees. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Classes are:

a. Whether Defendant uniformly charged the OPP Fees to members of the Class;

b. Whether Defendant's assessment of OPP Fees was unfair, deceptive or unlawful;

c. Whether Defendant adequately disclosed its imposition of the OPP Fees;

d. Whether the OPP Fees would be misleading to the reasonable consumer;

e. Whether Defendant's violations of the law were committed knowingly and/or intentionally;

f. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's conduct; and

g. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

h. Whether Plaintiff and the Classes are entitled to declaratory and injunctive relief and the nature of that relief

72. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the

---

[6] https://www.wexinc.com/products/employee-benefits/compliance-and-cobra-services/cobra/ (last accessed Sept. 24, 2025).

Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

73. **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of all Class Members because it is in Plaintiff's best interest to prosecute the claims alleged herein to obtain full compensation due to Plaintiff for the unfair and illegal conduct of which Plaintiff complain. Plaintiff also have no interest that conflicts with, or is antagonistic to, the interests of the Class. Plaintiff retained highly competent and experienced class action attorneys to represent Plaintiff and the interests of the Class. By prevailing on their own claims, Plaintiff will establish Defendant's liability to all members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to litigate this class action adequately and vigorously. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

74. **Superiority:** There is no plain, speedy or adequate remedy other than by maintenance of this class action. Individual actions by members of the Class seeking individual remedies will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

75. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

76. **Injunctive/Declaratory Relief:** The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Plaintiff and Class Members will continue to be deceived by Defendant's deceptive practices. Defendant acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

## CAUSES OF ACTION

## COUNT I

**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq.***
***(By Plaintiff, individually, and on behalf of the California Class)***
***(For injunctive relief only)***

77. Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 76 as if fully set forth herein.

78. This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*.

79. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of COBRA benefits and imposition of the OPP Fee to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The benefits purchased by Plaintiff and the Class are "services" within the meaning of the statute.

80. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of COBRA health benefits:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised"

(a)(9);

d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

81. When consumers make their monthly COBRA premium payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly premium payments, regardless of the form of payment and the amount of payment.

82. At no time does Defendant disclose the true nature of its OPP Fee; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

83. Specifically, Defendant advertises, displays and offers to customers that they will pay one price throughout the COBRA sign up process and in making premium payments, but this is false because Defendant applies mandatory OPP Fees at the very end of the registration process.

84. Throughout the entirety of the COBRA sign up process, Defendant fails to reasonably inform consumers that the OPP Fee will be charged. Reasonable consumers like Plaintiff and Class Members proceed to checkout without ever becoming aware of the OPP Fee assessed by Defendant.

85. At checkout, consumers making one-time monthly premium payments online are unable to avoid this OPP Fee, regardless of payment method, and are not reasonably informed of alternative payment methods to avoid the Opp Fee.

86. In addition, as detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

87. However, the OPP Fee is in addition to the maximum 102% cost of insurance coverage that consumers can be charged for COBRA.

88. Consumers, including Plaintiff and Class Members, are deceived into paying an unexpected, misleading and unlawful OPP Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the OPP Fee.

89. The existence and nature of the OPP Fee was not detectible to Plaintiff and Class Members in a timely, reasonable or appropriate manner.

90. Defendant misrepresented facts that are material to Plaintiff and Class Members in signing up for COBRA, when making premium payments and when determining the means of payment. Defendant's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.

91. Defendant imposes inadequately disclosed, deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay them. By this conduct, Defendant engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must they pay the OPP Fee unilaterally set by Defendant.

92. At all times, Defendant actively and intentionally misrepresented the existence and nature of the OPP Fee throughout the COBRA sign up process and when making premium payments.

93. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA on July __, 2026, and demanded

that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Plaintiff informed Defendant that if it failed to respond to Plaintiff's letters or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend their Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.

94. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

95. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

## **COUNT II**

**Unjust Enrichment/Quasi-Contract**
***(By Plaintiff, individually, and on behalf of the California Class)***

96. Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 76 as if fully set forth herein.

97. As set forth in this Complaint, Defendant's unfair and unlawful conduct includes, among other things, making materially false, deceptive and misleading representations about the OPP Fee throughout the COBRA sign up process and premium payment process. Defendant's acts and business practices offend the established public policy of California, as well as federal law, and there is no public benefit that comes from such false marketing and advertising—only harm.

98. Defendant misrepresented facts that are material to Plaintiff and Class Members in signing up for COBRA, when making premium payments and when determining the means of payment. Defendant's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.

99. Defendant imposes inadequately disclosed deceptive and unfair junk fees on consumers and their families who are coerced into believing that they have no choice but to pay

them. By this conduct, Defendant engineered a "pay junk fees to get health care" scheme. Consumers believe that in order to maintain health coverage they must pay the OPP Fee unilaterally set by Defendant.

100. When consumers make their monthly COBRA premium payments online, WEX tacks on a $20.00 OPP Fee to all one-time monthly premium payments, regardless of the form of payment and the amount of payment.

101. Throughout the entirety of the COBRA sign up process, Defendant fails to reasonably inform consumers that the OPP Fee will be charged. Reasonable consumers like Plaintiff and Class Members proceed to checkout without ever becoming aware of the nature and purpose of the OPP Fee assessed by Defendant.

102. At checkout, consumers making one-time monthly premium payments online are unable to avoid this OPP Fee, regardless of payment method, and are not timely or reasonably informed of alternative payment methods to avoid the Opp Fee.

103. In addition, as detailed herein, federal law specifies that in determining COBRA premiums, the individual subject to coverage may be responsible for paying the entire premium, including 100% of the cost of insurance coverage, plus a 2% administrative fee.

104. However, the OPP Fee is in addition to the maximum 102% cost of insurance coverage that consumers can be charged for COBRA.

105. Consumers, including Plaintiff and Class Members, are deceived into paying an unexpected, misleading and unlawful OPP Fee without adequate explanation or disclosure, and they could not—and did not—reasonably foresee the OPP Fee.

106. The existence and nature of the OPP Fee was not reasonably detectible to Plaintiff and Class Members.

107. At all times, Defendant actively and intentionally misrepresented the existence and nature of the OPP Fee throughout the COBRA sign up process and when making premium payments.

108. While Plaintiff and Class Members were harmed at the time of payment of the OPP Fee, Defendant was unjustly enriched by its misrepresentations and omissions. As a result of Defendant's unlawful, unfair and fraudulent business practices, Plaintiff and Class Members suffered injury.

109. To Defendant's benefit and enrichment, it knowingly realized substantial revenue from charging the OPP Fee at the expense of, and to the detriment of, Plaintiff and Class Members. Defendant's retention of these benefits violates fundamental principles of justice, equity and good conscience.

110. Plaintiff and the Class Members conferred significant financial benefits and paid substantial compensation to Defendant to sign up for COBRA and make premium payments, which are not as Defendant represents.

111. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments, encompassing the OPP Fee.

112. As such, Plaintiff and Class members seek disgorgement of all profits resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## COUNT III

**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
***(By Plaintiff, individually, and on behalf of the California Class)***

113. Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 76 as if fully set forth herein.

114. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

115. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive

provisions in broad, sweeping language.

116. The UCL imposes strict liability. Plaintiff Mayberry need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

117. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

118. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

119. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

120. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting the presence and nature of its OPP Fees.

121. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

122. The harm to Plaintiff Mayberry and the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

123. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of the CLRA, as explained above.

124. Defendant's business practices have misled Plaintiff Mayberry and the proposed California Class and, unless enjoined, will continue to mislead them in the future.

125. Plaintiff Mayberry relied on Defendant's misrepresentations in making her payment.

126. Defendant deceived Plaintiff Mayberry and California Class members into paying

junk fees they should not have to pay.

127. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff Mayberry and California Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff Mayberry and California Class members that they will be deceived. Plaintiff Mayberry is still on COBRA and therefore must continue to use WEX as her COBRA benefits administrator but cannot rely on Defendant's representations unless an injunction is issued.

128. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff Mayberry and California Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

129. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff Mayberry and the members of the California Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

130. Plaintiff Mayberry has no adequate remedy at law in part because Defendant's conduct is continuing. Plaintiff Mayberry therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully requests that the Court enter judgement against Defendant as follows:

a. Certification of the proposed Classes, including appointment of Plaintiff's counsel as class counsel;

b. An award of monetary relief, including actual, compensatory, statutory, treble, punitive damages and/or restitution as permitted by applicable law;

c. An award of non-restitutionary disgorgement of profits in an amount to be

determined at trial;

d. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e. For reasonable attorneys' fees and the costs of suit incurred; and

f. For such further relief as this Court may deem just and proper.

**JURY DEMANDED**

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

Dated: July 2, 2026

**KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*

Sophia G. Gold (SBN 307971)
*sgold@kalielgold.com*
Amanda J. Rosenberg (SBN 278507)
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Rachel Soffin (FL Bar 18054)
*rsoffin@pwfirm.com*
**PEARSON WARSHAW, LLP**
Mailing Address:
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8104

Melissa S. Weiner
*mweiner@pwfirm.com*
Ryan T. Gott
*rgott@pwfirm.com*
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600

*Attorneys for Plaintiff and the Putative Class*